UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ANDREW J. STANKEVICH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SABINA KAPLAN,** | ) | Civil Action No. 15-827 (RCL) |
| | ) | |
| **MISSISSIPPI COLLEGE, and** | ) | |
| | ) | |
| **JOSEPH RAGLAND,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Before the Court are defendant Mississippi College's Motion [22] to Dismiss plaintiff's "corrected" complaint,[1] defendant Sabina Kaplan's Motion [36] to Dismiss plaintiff's "corrected" complaint, plaintiff's Motion [38] for Leave to File a Second Amended Complaint, plaintiff's Motion [49] for Leave to File a Third Amended Complaint, and defendant Mississippi College's Motion [45] for Sanctions. Upon consideration of the motions, oppositions, replies, the entire record in this case, and the applicable law, the Court will GRANT defendant Mississippi College's Motion [22] to Dismiss, GRANT defendant Sabina Kaplan's Motion [36] to dismiss, DENY both plaintiff's Motion [38] for Leave to File a Second Amended Complaint and Motion [49] for Leave to File a Third Amended Complaint, and DENY defendant Mississippi College's Motion [45] for Sanctions. The Court will also *sua sponte* dismiss plaintiff's claim against defendant Joseph Ragland pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[1] Plaintiff refers to his first amended complaint—the pleading at issue in these motions—as a "corrected" complaint.

## I. BACKGROUND

In the present action, plaintiff Andrew J. Stankevich asserts two claims. The first claim is brought under the Racketeering Influenced and Corrupt Organizations Act of 1970 ("RICO") against defendants Mississippi College ("MC"), Joseph Ragland, and Sabina Kaplan, the Superintendent of Bedford Hills Correctional Facility ("BHCF") in New York state. The second is brought against Mississippi College for breach of contract.[2] The claims are rooted in the alleged harms plaintiff suffered as a student at Mississippi College School of Law ("MC Law") and in the defendants' alleged interference with plaintiff's relationship with Joyce Powell, an inmate at BHCF.

Plaintiff enrolled in MC Law in the fall of 2009. Corrected Compl. ¶ 1, ECF No. 15. Although he graduated in 2014, plaintiff's time at MC Law was tumultuous. While enrolled at MC Law, plaintiff issued formal complaints with the ABA and the U.S. Department of Education, *id.* at ¶ 6, engaged in heated and prolonged disputes with professors, *id.* at ¶ 7, and posted a provocative statement on Facebook that MC Law considered threatening.[3] *Id.* at ¶ 24.

These conflicts were in part fueled by plaintiff's belief that MC Law is a racist and homophobic institution. Indeed, many of plaintiff's present allegations were first lodged in formal complaints he submitted to the ABA concerning MC Law's allegedly discriminatory policies. *Id.* at ¶¶ 6-14. Essentially, plaintiff claims MC Law "provided no warning" of its stance against "on-campus LGBT student group[s]." *Id.* at ¶ 2. Plaintiff challenged these and other policies in formal

---

[2] In his "corrected" complaint, plaintiff also brings a claim against under 31 U.S.C. § 3730(h)(1), which he has since withdrawn. *See* Pl. Andrew Stankevich's Answer to the Def. Mississippi College's Mot. to Dismiss 1 (admitting to ¶ 5 of Mississippi College's Motion to Dismiss, which states "Stankevich failed to properly allege a claim under 18 U.S.C. § 3730(h), the whistleblower statute, because protection under that statute is limited to the employment relationship").

[3] Plaintiff stated on his Facebook page: "it would be funny if God smites MC Law and MC undergrad, the staff and students who deserve such, die a terrible death. Ha ha ha ha." Corrected Compl. ¶ 24.

ABA complaints on April 30, 2012 and December 31, 2012. *Id.* at ¶ 5. Adding to his grievances, Stankevich also alleges that a MC Law professor "falsely portrayed the Plaintiff as a 'blatant liar,'" and provided the ABA with false records and fraudulent psychological reports in connection with subsequent ABA investigations. *Id.* at ¶¶ 5, 7, 15-16.

In addition to the charges embedded in plaintiff's ABA complaints, Stankevich asserts additional facts to support his theory that MC Law treated him unfairly and subjected him to a hostile educational environment. *Id.* at ¶ 5. For example, he alleges the school discouraged students from verifying his accounts of harassment. *Id.* at ¶ 17. He even goes so far as to claim that an assistant dean "intimidated" him into not reporting to the Department of Education or law enforcement anonymous rape threats he received. *Id.* at ¶ 10. Further, in his pleadings, Stankevich emphasizes that the Dean of MC Law "and others staged a hoax in December 2011 to depict the plaintiff as a danger to the law school." *Id.* at ¶ 22. To perpetrate this hoax, the law school allegedly first arranged for a student to "shout[] praise for Adolf Hitler," knowing that one of plaintiff's family members had survived the Holocaust. *Id.* at ¶ 23. Next, when Stankevich complained about this incident to the law school's professors, the professors told him to "suck it up," explaining that the Klu Klux Klan was once prevalent in Mississippi. *Id.* at ¶¶ 23-24. Reacting to the school's offensive behavior, plaintiff wrote on Facebook, "it would be funny if God smites MC Law and MC undergrad, the staff and students who deserve such, die a terrible death. Ha ha ha ha." *Id.* at ¶ 24. As stated, Stankevich believes that this series of events—including his own Facebook post— all took place according to the design of an elaborate "hoax" MC Law concocted and carried out to marginalize plaintiff and "depict him as a danger to the law school." *Id.* at ¶ 22.

Although MC Law neither expelled nor suspended Stankevich for posting this statement, plaintiff argues that the school imposed a disproportionate punishment, and at times, used the

3

incident as an excuse to unfairly target and harass him. Citing security concerns, the university "permanently barred [plaintiff] from calling, entering the campus, or . . . attending his Spring 2014 graduation ceremony," *id.* at ¶ 25, and forced him to take final exams under watch of security guards. *Id.* at ¶ 27. Plaintiff also alleges the Dean of MC Law demanded the FBI arrest him and used an online survey to "elicit prejudicial testimony to justify banning the Plaintiff from campus." *Id.* at ¶¶ 27-28. Further, Stankevich asserts the Dean "ordered the Plaintiff to undergo an intentionally unfair psychological examination to undermine the Plaintiff's credibility." *Id.* at ¶ 33. This allegedly fraudulent examination determined plaintiff may be physically violent, *id.* at ¶ 36, a result which plaintiff claims contradicts two "other [psychological] evaluations [that] found plaintiff to be peaceful and safe." *Id.* at ¶ 36.

After making these charges against MC Law, plaintiff attempts to connect the law school's alleged misdeeds with plaintiff's failed attempts to represent Joyce Powell, an inmate at New York's BHCF, in a habeas corpus petition. After Powell's habeas petition was filed in the Western District of New York, Stankevich—while still a student at MC Law—allegedly filed a second and separate motion, captioned *Stankevich v. Netburn*, requesting "that the court allow [Stankevich] to litigate Powell's habeas petition as a non-attorney." *Id.* at ¶ 40. Plaintiff asserts that Powell "said she would send letters indicating her support of *Netburn*" but later withdrew her approval, in a correspondence plaintiff believes was "ghost-written by MC [Law]." *Id.* at ¶ 44. Further, Stankevich also claims "BHCF corruptly caused Powell to recant" her support for his *Netburn* petition. *Id.* at ¶ 56. Adding to his allegations surrounding the habeas petition, plaintiff claims BHCF denied him access to visit Powell, *id.* at ¶ 58, obstructed the delivery of his mail and packages to Powell, *id.* at ¶¶ 59, 72, and otherwise harassed him. *Id.* at ¶ 76.

In addition to his grievances against MC Law and Sabina Kaplan, Stankevich also brings a RICO claim against Joseph Ragland. Plaintiff paid $1,000 to Joseph Ragland, a practicing lawyer in Clinton, MS and former professor at MC Law, in connection with plaintiff's efforts to represent Powell in her habeas petition. *Id.* at ¶ 60. Although Ragland returned the $1,000 to avoid discipline from the state bar, *id.* at ¶ 62, plaintiff claims that Ragland "launch[ed] an extortion racket through BHCF." *Id.* at ¶ 70. Moreover, plaintiff alleges that Ragland maintains ties with MC Law, as a former professor "who lives within walking distance" of the university. Pl. Andrew Stankevich's Answer to the Def. Mississippi College's Mot. to Dismiss 3, ECF No. 41.

Based on these allegations, plaintiff has brought a RICO claim against all three defendants and a breach of contract claim against MC Law. Defendants Kaplan and MC have moved to dismiss these claims for lack of personal jurisdiction under Federal Rule of Civil Procedure ("FRCP") 12(b)(2) and for failure to state a claim under FRCP 12(b)(6). Although defendant Ragland has not submitted a separate motion to dismiss, he echoes the same arguments in his answer, stating that plaintiff has "fail[ed] to state a claim upon which relief may be granted." Second Answer, Objs., and Affirmative Defenses ¶ 1, ECF No. 39. Moreover, defendant Ragland submitted a filing stating that he "concurs and joins in with Defendant MC's Motion to Dismiss Plaintiff Complaint Pursuant to Fed. R. Civ. P. Rules 12(b)(2) and 12(b)(6)." Obj. to Pl.'s Mot. for Leave to File a Third Am. Compl. ¶ 8, ECF No. 50.

## II.     MOTIONS TO DISMISS

The Court does not have personal jurisdiction over defendants Kaplan and MC and will therefore grant their motions to dismiss under FRCP 12(b)(2). After conceding the jurisdictional

argument in his response to defendant MC's motion to dismiss,[4] plaintiff requested that the Court transfer this case to the Southern District of New York pursuant to its powers under 28 U.S.C. § 1406(a).[5] Finding "substantive problems" with plaintiff's asserted claims, *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983), the Court will dismiss this case in its entirety and decline to transfer it to the Southern District of New York.

Unlike defendants Kaplan and MC, defendant Ragland has not submitted a motion to dismiss; however, the Court will *sua sponte* dismiss plaintiff's claim against him for failure to state a claim under FRCP 12(b)(6).

### A) Defendants Kaplan and Mississippi College

As discussed, both defendants Kaplan and MC have submitted motions to dismiss for, among other things, lack of personal jurisdiction. *See* Def.'s Motion to Dismiss Pl.'s Compl. Pursuant to Federal Rules of Civil Procures Riles 12(b)(2) and 12(b)(6), ECF No. 22; Notice of Def. Sabina Kaplan's Mot. to Dismiss the First Am. Compl., ECF No. 36. Plaintiff has effectively conceded the point. As discussed, he acknowledges in his response that this Court lacks personal jurisdiction over MC. Moreover, he never directly responded to defendant Kaplan's motion to

---

[4] Pl. Andrew Stankevich's Answer to the Def. Mississippi College's Mot. to Dismiss 1, ECF. No. 41 (admitting to ¶ 3 of defendant MC's motion to dismiss, which states "The Plaintiff fails to properly allege facts that substantiate personal jurisdiction over MC in the District of Columbia").

[5] Under plaintiff's theory, the Southern District of New York would hold personal jurisdiction over all three defendants because in a civil RICO action, once personal jurisdiction is established for one defendant, jurisdiction is established over all other parties not residing in the district upon a showing that the "'ends of justice' so require." Pl. Andrew Stankevich's Answer to the Def. Mississippi College's Mot to Dismiss 2, ECF No. 41 (citing *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d. Cir. 1998). Because defendant Kaplan is a resident of New York, according to plaintiff's theory, plaintiff is able to bring a RICO claim against all three defendants in New York.

dismiss.[6] After conceding the jurisdictional argument, Plaintiff requested that the Court transfer this case to the Southern District of New York under 28 U.S.C. § 1406(a).

### 1. Lack of Personal Jurisdiction

This Court lacks personal jurisdiction over defendants Kaplan and MC, neither of whom is a resident of the District of Columbia, and will therefore grant their motions to dismiss. As the D.C. Circuit has noted, "[t]o establish personal jurisdiction over a non-resident, a court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (citing *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000)). The District's long-arm statute confers jurisdiction over defendants who transact business in D.C., contract to supply services in D.C., commit a tort in D.C., commit a tort outside of D.C. if the defendant regularly does or solicits business in D.C., owns or uses real property in D.C., contracts to insure something in D.C., or has a martial or parental relationship in D.C. D.C. Code § 13-423(a)(1)-(7).

In this case, it is clear that personal jurisdiction is inapplicable under D.C.'s long-arm statute for defendants Kaplan and MC because neither has ever—for the purposes of this litigation—set foot in D.C., caused harm in D.C., or conducted business of any kind that relates to or affects D.C. or its any of its residents. Moreover, as stated, plaintiff has conceded that the Court lacks personal jurisdiction over defendant MC and has failed to respond to Kaplan's motion to

---

[6] Defendant MC Law filed its motion to dismiss on August 7, 2015. ECF No. 22. Defendant Kaplan filed her motion to dismiss on September 18, 2015, ECF No. 36. Since that time, plaintiff filed a response to defendant MC Law's motion to dismiss, ECF No. 41, a motion for leave to file a second amended complaint, ECF No. 38, a motion for leave to file a third amended complaint, ECF No. 49, and a reply to support his motion for leave to file a third amended complaint, ECF No. 53.

dismiss. The Court therefore finds it lacks personal jurisdiction over defendants Kaplan and MC and will grant their motions to dismiss pursuant to FRCP 12(b)(2).

### 2. Transfer of Venue to Southern District of New York

After plaintiff conceded his jurisdictional argument, he requested that this Court transfer his case to the Southern District of New York under 28 U.S.C. § 1406(a); upon an evaluation of the substance of plaintiff's claims, the Court will deny his request to transfer.

### a. Legal Standard Under 28 U.S.C. § 1406(a)

"A court may transfer a case to another district even though it lacks personal jurisdiction over the defendants." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983). As 28 U.S.C. § 1406(a) states, "if it be in the interest of justice, [the court may] transfer [a] case to any district in which it could have been brought." Although the interest of justice generally requires transferring such cases instead of dismissing them, *see Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962), dismissal may be appropriate where there are obvious substantive problems with the plaintiff's claims. *Buchanan v. Manley*, 145 F.3d 386, 389 n.6 (D.C. Cir. 1998) (finding no abuse of discretion where district court concluded that transfer would not be in the interests of justice where there were "substantive problems" with the plaintiff's claims); *Naartex*, 722 F.2d at 789 ("In light of the substantive problems with its asserted claims, Naartex's additional objection that the case should have been transferred to another federal court is likewise without merit."); *Laukus v. United States*, 691 F. Supp. 2d 119 (D.D.C. 2010) (dismissing, rather than transferring, a series of claims); *see also Gonzalez v. Hasty*, 651 F.3d 318, 324 (2d Cir. 2011) (stating that courts should abstain from a transfer when a case is a "sure loser" on the merits); *Phillips v. Seiter*, 173 F.3d 609, 610-11 (7th Cir. 1999) ("[W]hether or not the suit has any possible merit bears significantly on whether the court should transfer or dismiss it."). The decision whether a transfer

8

or a dismissal is in the interest of justice rests within the sound discretion of the district court. *Naartex*, 722 F.2d at 789.

### b.  Claim 1: RICO

Because plaintiff fails to allege any facts to suggest the defendants operated as an enterprise as defined by RICO, the Court will dismiss, rather than transfer plaintiff's RICO claim as to defendants Kaplan and MC. A violation of § 1962(a) of the RICO Act consists of four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2000) (citing *Sedina, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Focusing on RICO's second element, an enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The existence of an enterprise must be shown through facts that allege "(1) a common purpose among the participants, (2) organization, and (3) continuity." *United States v. Richardson*, 167 F.3d 621, 625 (D.C. Cir. 1999). More specifically, "[i]t is not enough for a group of individuals to commit acts enumerated by § 1961(1); plaintiff must assert that those individuals were organized together in some way, and that there was a structure to the association." *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 119 (D.D.C. 2005) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981); *United States v. Perholtz*, 842 F.2d 343, 363 (D.C. Cir. 1988)). Put differently, to successfully state a claim under RICO, a plaintiff must plead facts "identifying the common purpose and organizational and decisionmaking structure of the alleged enterprise." *Dodd v. Infinity Trabel*, 90 F. Supp. 2d 115, 117 (D.D.C. 2000) (citing *United States v. White*, 116 F.3d 903, 924 (D.C. Cir. 1997)); *see also United States v. Turkette*, 452 U.S. 576, 583 (1981) (defining "enterprise" for the purposes of

RICO as a "group of persons associated together for a common purpose of engaging in a course of conduct").

In the present case, plaintiff has failed to identify the common purpose and shared organizational structure between defendants MC, Sabina Kaplan, and Joseph Ragland. A brief summary of the defendants' circumstances and plaintiff's allegations illustrates this point. First, MC Law is a law school in Clinton, Mississippi, where Stankevich was enrolled from 2009 through 2014. For a variety of reasons, he believes that the law school targeted him for unfair treatment. Second, Sabina Kaplan is the superintendent of BHCF in New York; Stankevich believes that she and other BHCF personnel interfered with his attempted representation of Joyce Powers and otherwise harassed him. Third, Joseph Ragland is a lawyer and practicing lawyer in Clinton, Mississippi, who plaintiff claims "extorted" $1,000 from him—a sum of money Ragland ultimately returned. Corrected Compl. ¶¶ 62-63.

Neglecting to allege sufficient facts to suggest these defendants operated as an associated enterprise, Stankevich simply lists grievances he has with each party and then conclusively and generally invokes the language of RICO. With respect to defendants MC and Kaplan, the most specific fact Stankevich alleges to tie the parties together is that a number of Kaplan's filings were "ghostwritten" by MC's lawyer. Pl. Andrew Stankevich's Answer to the Def. Mississippi College's Mot. to Dismiss 3. This allegation is completely unsupported, and even if true, it would be insufficient to make the required showing that defendants operated under the same organizational structure. Moreover, Stankevich's RICO claim has other, unrelated deficiencies, such as those concerning RICO's requirements for "continuity" and a "pattern of racketeering activity." *See, e.g.*, *United States v. Richardson*, 167 F.3d 621, 625-26 (D.C. Cir. 1999) ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not

satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989))).

Regarding Ragland, Stankevich vaguely asserts "[i]t is a highly improbable coincidence for a former MC Law Professor, who lives within walking distance of MC Law, to have such an unusual relationship with Bedford Hills Correctional Facility in New York." *Id.* As these are the most specific allegations plaintiff offers to show the defendants operated as a bona fide RICO enterprise, the Court finds "[t]he complaint's broad and vague assertions simply recite legal conclusions and regurgitate the RICO elements" without ever linking the defendants together through "allegations of common control." *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 119 (D.D.C. 2005). Because plaintiff has not alleged facts to link defendants together as an enterprise, plaintiff's RICO claim is completely without merit; therefore, the Court will dismiss the claim, rather than transfer it pursuant to § 1406(a).

### c.  Claim 2: Breach of Contract

Because plaintiff's breach of contract claim against MC is also without merit, the Court will dismiss, rather than transfer, this claim as well. Plaintiff requests that the Court transfer this case, including his breach of contract claim, to the Southern District of New York pursuant to 28 U.S.C. § 1406(a). Section 1406(a) however permits transfer only to a "district or division in which [the case] could have been brought." Defendant notes, "Stankevich has provided no facts that would independently substantiate personal jurisdiction of MC in the Southern District of New York. MC has not committed any actions in the State of New York, nor has Stankevich alleged MC committed any actions in the State of New York." Reply in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl. Pursuant to Federal Rules of Civil Procedure Rules 12(b)(2) and 12(b)(6) 2, ECF No.

35. The Court agrees. Because plaintiff could not have brought its breach of contract claim in New York, transfer is improper.

In addition to New York, this Court will not transfer Stankevich's breach of contract claim to Mississippi, where MC Law is based, because plaintiff has failed to properly state a claim. Stankevich argues that after he contracted with MC Law to provide him with a legal education "as defined by the ABA's standards for Accredited Law Schools," MC Law breached that contract by failing to comply with those standards. Corrected Compl. 46. But as defendant points out, MC Law maintained its good standing with the ABA and remained fully accredited during Stankevich's tenure, and importantly, Stankevich graduated from MC Law and received his law degree. Although Stankevich issued two formal complaints to the ABA, Corrected Compl. ¶ 5, neither "resulted in any adverse accreditation consequences" for MC Law. Mem. in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl. 23, ECF No. 23. In light of the conferral of Stankevich's degree, MC Law fully maintaining its accreditation, and the ABA clearing the law school of any wrongdoing, the Court will dismiss, rather than transfer, plaintiff's breach of contract claim—finding that it wholly lacks merit.

### B) Defendant Ragland

Although defendant Ragland has not submitted a motion to dismiss,[7] the Court will *sua sponte* dismiss plaintiff's claim against him under FRCP 12(b)(6). The Court may dismiss a complaint *sua sponte* pursuant to FRCP 12(b)(6) where it is "patently obvious" that the plaintiff cannot prevail on the facts alleged in the complaint. *Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d

---

[7] Defendant Ragland has however submitted an answer where he raises "failure to state a claim" as his first defense. Second Answer, Objs., and Affirmative Defenses ¶ 1, ECF No. 39. Moreover, as stated, defendant Ragland submitted a filing stating that he "concurs and joins in with Defendant Mississippi College's Motion to Dismiss Plaintiff Complaint Pursuant to Fed. R. Civ. P. Rules 12(b)(2) and 12(b)(6). Obj. to Pl's Mot. for Leave to File a Third Amended Compl. ¶ 8, ECF No. 50.

725, 726-27 (D.C. Cir. 1990); *see also Tate v. Burke*, 131 F.R.D. 363, 365 (D.D.C. 1990) (dismissing pro se complaint *sua sponte* where the complaint made clear that there was "indisputedly no factual and legal basis for the asserted wrong"). Notably, in 2007, this Court faced a remarkably similar set of facts in *Perry v. Discover Bank*, 514 F. Supp. 2d 94 (D.D.C. 2007). In that case, the plaintiff submitted a 62-page complaint containing "few factual allegations, instead consisting primarily of statement of law and case citations. . . . Elsewhere in the complaint, plaintiffs allege[d] that defendants violated their rights through egregious schemes and torts to steal the property of the Plaintiffs and engaged in conspiracy to defraud the Plaintiffs of their rights." *Id.* at 95. (quotation marks omitted). The Court dismissed plaintiff's complaint *sua sponte*[8] because plaintiff provided "no factual or legal bases for alleged wrongdoing by defendants." *Id.*

Similarly, in this case, the Court finds that plaintiff has failed to allege factual or legal bases for wrongdoing against defendant Ragland. Plaintiff simply claims defendant Ragland "launch[ed] an extortion racket through BHCF." Corrected Compl. ¶ 70. The vast majority of the remainder of his complaint relates to charges against defendants Kaplan or MC Law and consists primarily of statutory and case citations. Because plaintiff has failed to allege specific facts to tie defendant Ragland to any wrongdoing, let alone to a bona fide RICO enterprise, the Court will dismiss plaintiff's claim against defendant Ragland *sua sponte* pursuant to FRCP 12(b)(6).

## III.   PLAINTIFF'S MOTIONS FOR LEAVE TO FILE AMENDED COMPLAINTS

In addition to granting defendants' motions to dismiss, the Court will deny plaintiff's motion for leave to submit a second amendment complaint and motion for leave to submit a third amended complaint. The D.C. Circuit has ruled that district courts have discretion "to deny a

---

[8] Although the Court dismissed the complaint without prejudice in this case, in both *Baker* and *Tate*, the D.C. Circuit and district court dismissed the complaint with prejudice.

motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss." *In re Interbank Funding Corp. Secs. Litig.*, 629 F.3d 213, 215 (D.C. Cir. 2010) (citing *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 336 F.3d 930, 945 (D.C. Cir. 2004)).

In this case, neither of plaintiff's proposed amended complaints cure the defects identified in sections II(A)(2)(a)-(b). The proposed complaints continue to fail to allege facts to show the defendants operated as an enterprise under RICO or that MC Law breached its contract with Stankevich. With respect to the defendant's common purpose and organizational structure under RICO, plaintiff asserts that he "alleges two (2) distinct, but overlapping RICO conspiracies that both name the same three (3) defendants that should be tried together. If treated as one, the combined criminal enterprise would have no continuity without the Plaintiff." Proposed Third Am. Compl. 5, ECF No. 49-2. To substantiate his allegation that the defendants collaborated, plaintiff simply restates his belief that an MC Law attorney was "ghostwriting" various documents filed by Kaplan, *id.*, and his suspicion that defendant Ragland's living within walking distance of MC Law is not a "highly improbable coincidence." *Id.* As was the case with plaintiff's corrected complaint, these allegations cannot form the basis of a RICO enterprise under 18 U.S.C. § 1962(a) and cannot survive a motion to dismiss.

In addition to his RICO claim, when stating his breach of contract claim against MC Law, plaintiff's proposed second and third amended complaints simply reassert the insufficient allegations he first presented in his "corrected" complaint. Stankevich discusses ways in which MC Law "condoned 'Hitler praising'" *id.* at ¶ 40, promoted a culture of racism, *id.* at ¶¶ 52-56, and "ordered the Plaintiff to undergo an intentionally unfair psychological evaluation to undermine the Plaintiff's credibility." *Id.* at ¶ 71. As was the case with Stankevich's RICO claim, plaintiff's proposed complaints introduce no new allegations that would allow his claim for breach of contract

to overcome a motion to dismiss under FRCP 12(b)(6). Accordingly, the Court will deny Stankevich's two motions for leave to file amended complaints.

## IV.    DEFENDANT MISSISSIPPI COLLEGE'S MOTION FOR SANCTIONS

Because today's dismissal is the first time plaintiff has received a formal order and opinion concerning his RICO and breach of contract claims and because he is proceeding in this matter pro se, the Court will not impose sanctions under Rule 11 of the Federal Rules of Civil Procedure at this time. Defendant MC has moved to impose sanctions under Rule 11, specifically seeking reasonable attorney's fees to defend this litigation and a pre-filing injunction against Stankevich. Mot. for Sanctions Pursuant to Fed. R. Civ. Rule 11 ¶ 6, ECF No. 45. Rule 11 states that "an attorney or unrepresented party" must perform a reasonable inquiry into the legal viability and factual accuracy of a pleading or written motion before filing it with the court. Fed. R. Civ. P. 11(b). The rule authorizes the Court to sanction "an attorney, law firm, or party" who violates the rule, *see* Fed. R. Civ. P. 11(c)(1), and makes clear that "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct." Fed. R. Civ. P. 11(c)(4). Essentially, Rule 11 permits courts to impose sanctions when a party's legal contentions are frivolous or unwarranted, a party's claims have been presented for an improper purpose such as harassment, or a party's factual contentions wholly lack evidentiary support. Fed. R. Civ. P. 11(b)(1)-(3); *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) ("Rule 11 . . . authorizes sanctions for the filing of papers that are frivolous, lacking in factual support , or presented for any improper purpose, such as to harass (quotation marks omitted)."); *see also Smith v. Scalia*, 44 F. Supp. 3d 28, 45 (D.D.C. 2014) (explaining the legal standard).

Under this framework, the Court is permitted to impose monetary sanctions or a pre-filing injunction—as MC requests—when faced with a frivolous complaint. Monetary sanctions are

15

purely discretionary and "may be imposed whenever a court determines that Rule 11 has been violated, provided that the sanctioned party has been given a notice and an opportunity to respond." *Smith*, 44 F. Supp. 3d at 45 (citing Fed. R. Civ. P. 11(c)(3); *Cobell v. Norton*, 211 F.R.D. 7, 10 (D.D.C. 2002)). Importantly, Rule 11 monetary sanctions may be imposed on pro se litigants. Fed. R. Civ. P. 11(b) (applying Rule 11's standards and requirements to "unrepresented parties); *Smith*, 44 F. Supp. 3d at 45 ("Indeed, Rule 11 monetary sanctions can even be imposed on pro se litigants."); *Kurtz v. U.S.*, 779 F. Supp. 2d 50, 51 n.2 (D.D.C. 2011) ("[Rule 11] sanction may be imposed against pro se plaintiffs."); *Hamrick v. Gotlieb*, 416 F. Supp. 2d 1, 4 (D.D.C. 2005) ("[T]he Court certainly has the authority to impose Rule 11 sanctions against *a pro se* plaintiff."). Although courts are permitted to sanction pro se plaintiffs, such litigants are held to a "more lenient standard than professional counsel, with [Rule 11's] application determined on a sliding scale according to the litigant's level of sophistication." Tracy Bateman Farrell & John R Kennel, Federal Procedure, Lawyers Edition § 62:771 (2015).

In addition to monetary sanctions, there is no question a court may employ injunctive remedies, such as the filing restrictions defendant MC requests, "to protect the integrity of courts and the orderly and expeditious administration of justice." *Kaempfer v. Brown*, 872 F.2d 496, 496 (D.C. Cir. 1989) (quoting *Urban v. United Nations,* 768 F.2d 1497, 1500 (D.C. Cir. 1985)). Such restrictions, however, "should remain very much the exception to the general rule of free access to the courts," and "the use of such measures against" pro se plaintiffs "should be approached with particular caution." *Smith v. Scalia*, 44 F. Supp. 3d 28, 46 (D.D.C. 2014) (quoting *In re Powell,* 851 F.2d 427, 431 (D.C. Cir. 1988) (internal quotation marks and citation omitted)).

To support its motion to sanction Stankevich as a pro se plaintiff, defendant MC cites two cases; however, neither is directly on point nor particularly persuasive under the present set of

facts. First, defendant points to *Scheck v. General Electric Corp.*, a case where the plaintiff, somewhat familiarly, submitted a RICO complaint consisting of "25 single-spaced pages of rambling and incoherent allegations." 1992 WL 13219, at *1 (D.D.C. Jan. 7, 1992). The Court, however, declined to impose sanctions, emphasizing that "[p]laintiff's frivolous complaint was his first before this Court." *Id.* at *4. That same logic applies in the present case and weighs against imposing sanctions. Indeed, this lawsuit is the first Stankevich has brought in Washington D.C., and this memorandum is the first instance in which a court has formally declared his claims against MC to be frivolous. Next, MC cites to *Smith v. Scalia*, 44 F. Supp. 3d 28 (D.D.C. 2014). Although the Court in *Smith* did impose sanctions on the pro se plaintiff in the form of a pre-filing injunction, it did so only after plaintiff had filed ten complaints relating to the same alleged harm. The plaintiff in the present case has initiated nowhere near that number of lawsuits, thus limiting *Smith*'s persuasive authority.

After considering MC's arguments and legal authority, the Court will decline to impose Rule 11 sanctions on Stankevich because he is a pro se litigant and because up until now, he had yet to receive a formal declaration that his claims are frivolous. First, although Stankevich holds a law degree, he is still a pro se litigant and cannot be held to the same standard as a lawyer licensed to practice in Washington D.C. Additionally, "RICO is a complicated statute," making Stankevich's woeful and complete misconstrual of the law's framework more tolerable. *Scheck*, 1992 WL 13219, at *4.

Next, as referenced, today's order and memorandum represent the first time Stankevich's RICO and breach of contract claims against MC have come to a resolution, a second point that weighs against imposing of Rule 11 sanctions. Courts around the country have generally refrained from sanctioning pro se plaintiffs under Rule 11 unless the plaintiff has filed multiple frivolous

and overlapping claims. *See Russell v. Sanilac Cnty.*, No. 14-13134 2015 WL 5626628, at *5 (E.D. Mich. Sept. 24, 2015) (citing *Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1882 (7th Cir. 1989)); *McCampbell v. KPMG Peat Marwick*, 982 F. Supp. 445, 448 (N.D. Tex. 1997) ("[P]ro se parties should be sanctioned only after successive attempts to press a wholly frivolous claim" (citation omitted).); *Soling v. New York*, 804 F. Supp. 532, 538 (S.D.N.Y. 1992) ("[Pro se] [p]laintiff's claims are insufficient to justify relief; [however] sanctions are inappropriate unless further overlapping lawsuits are filed."); *Reinert v. O'Brien,* 805 F. Supp. 576, 579 (N.D. Ill. 1992) ("This court adheres to the principle that pro se parties shall be sanctioned under Rule 11 only after successive attempts to press a wholly frivolous claim."). In the present matter, Stankevich has, to date, filed two lawsuits against MC. Mot. for Sanctions Pursuant to Fed. R. Civ. P. Rule 11, Ex. A (showing a letter describing the Stankevich's first lawsuit against MC). He filed the first in New York and voluntarily withdrew it after conceding the New York courts lacked jurisdiction over the defendant and before the court was able to issue a ruling on the substance of his claim. The Court will decline to impose sanctions on Stankevich at this time because although his claims against MC are thoroughly meritless, no court until now, has issued a ruling to that effect.

In light of facts and circumstances of this case, Stankevich should consider himself fortunate that the Court has exercised leniency. Make no mistake, the plaintiff's claims are childish, bordering on delusional. As a holder of a law degree, Stankevich should know his ridiculous RICO claim is wholly without merit. Even the most casual and cursory research shows that when a "plaintiff alleges only a single scheme, a single injury, and few victims it is 'virtually impossible for plaintiffs to state a RICO claim'" for failure to meet the pattern of racketeering requirement. *W. Assocs. Ltd. P'ship v. Mrk. Square Assocs.*, 235 F.3d 629, 634 (D.C. Cir. 2001) (quoting *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir.

1995); *Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365, 376 (D.D.C. 2008) (quoting the same language); *see also Dodd v. Infinity Trabel*, 90 F. Supp. 2d 115, 117 (D.D.C. 2000) (requiring that a plaintiff plead facts "identifying the common purpose and organizational and decisionmaking structure of the alleged enterprise" to successfully state a claim under RICO). Instead, Stankevich cites to unrelated cases to assert, remarkably, that RICO's pleading requirements are governed by a "low standard." Pl. Andrew Stankevich's Mem. in Resp. to Def.'s Filings in Opp'n to the Pl.'s Mot. for Leave to File a Third Am. Compl. ¶ 10, ECF. No. 53. Like many of his other arguments, there is absolutely no legal authority to support this position. It is false, and reasonable inquiry would show it to be false—making Stankevich eligible for Rule 11 sanctions and a clear beneficiary of the Court's present forbearance. *Cf. Smith v. Scalia*, 44 F. Supp. 3d 28, 46 (D.D.C. 2014) ("[T]he fact that monetary sanctions can appropriately be assessed against a pro se party . . . does not necessarily mean that they *should* be" (emphasis in original).)

In addition to the substance of his legal arguments, Stankevich has been careless, uncooperative, and unpredictable as he has attempted to navigate these proceedings. Throughout this litigation, Stankevich has ignored dispositive motions filed by the defendants and disregarded fundamental rules of civil procedure—while continuing to erratically and impudently press this litigation by submitting motions of his own. More specifically, Stankevich has yet to respond to defendant Kaplan's motion to dismiss filed on September 18, 2015 and has not filed a formal response to defendant MC's motion for sanctions. Instead, in his reply brief for his motion for leave to file a third amended complaint, Stankevich simply calls MC's request for sanctions "frivolous," cites to one case, and repeats his incoherent and conclusory arguments the defendants somehow operated a RICO enterprise. Pl. Andrew Stankevich's Mem. in Rep. to the Def.'s Filing in Opp'n to Pl.'s Mot. for Leave to File a Third Compl. ¶ 2. All the while, Stankevich has continued

to submit and pursue his own motions, requesting that the Court grant him leave to amend his complaint for a second and third time. Essentially, Stankevich filed a lawsuit and then participated in the proceedings—proceedings which he initiated—completely on his terms, disregarding the opposing parties' motions and arguments and treating the rules of civil procedure as though they did not exist.

This careless and audacious attitude is consistent with Stankevich's decision to file this lawsuit in Washington D.C. in the first place. As plaintiff now admits, there is absolutely no way to argue that this court has personal jurisdiction over any one of the three defendants. But MC still had to expend time, money, and resources to rebut Stankevich's laughable argument that this Court holds personal jurisdiction over MC because the school "probably owns stock in businesses located in D.C." Corrected Compl. 2; *see also* Mem. in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl. Pursuant to Federal Rules of Civil Procedure Rules 12(b)(2) and 12(b)(6) 9, ECF No. 23 (rebutting plaintiff's argument). In fact, this lawsuit is the second time Stankevich filed a complaint against MC and then withdrew it only after MC committed substantial resources to argue that the court where Stankevich initiated his lawsuit lacked personal jurisdiction over it. *See* Mot. for Sanctions Pursuant to Fed. R. Civ. P. Rule 11, Ex. A (showing a letter describing the Stankevich's first lawsuit, filed in New York, and its jurisdictional deficiencies). Although Stankevich's claims are baseless, his allegations of a RICO conspiracy are serious, leaving MC no choice but to spend— for a second time—substantial amounts of time and money to offer a thorough defense.

The Court's present description of Stankevich's behavior as careless may be charitable. One could credibly argue that Stankevich is using the judicial process as a vehicle harass Mississippi College and settle his long-simmering grudge against the institution. Stankevich's present lawsuit against MC—his second one in six months—has been a total waste of the court's

time and the defendants' resources. His conduct is reproachable, and he is now on notice that a third complaint that alleges the same or similar charges against Mississippi College will incur sanctions. As someone who holds a law degree, he will be held to a higher standard than other pro se plaintiffs; moving forward, his wasteful and frivolous lawsuits will not be tolerated.

## V.    CONCLUSION

For the reasons stated herein, the Court will GRANT defendant Mississippi College's Motion [22] to Dismiss, GRANT defendant Sabina Kaplan's Motion [36] to dismiss, DENY plaintiff's Motion [38] for Leave to File a Second Amended Complaint and Motion [49] for Leave to File a Third Amended Complaint, and DENY defendant Mississippi College's Motion [45] for sanctions. The Court will also *sua sponte* dismiss plaintiff's claim against defendant Joseph Ragland pursuant to Federal Rule of Civil Procedure 12(b)(6).

A separate Order consistent with this Memorandum Opinion shall issue this date.


Signed by Royce C. Lamberth, United States District Judge, on January 14, 2016.